EL PUEBLO DE PUERTO RICO, demandante y apelante, *v.* JUAN CUPRIL OLIVERAS, acusado y apelante.

Núm. 7931.—*Sometido:* Diciembre 14, 1939. *Resuelto:* Junio 18, 1940.

*Oscar Souffront,* abogado del apelante; *R. A. Gómez, Fiscal,* abogado de El Pueblo, apelado.

---

* NOTA: Véase el **prefacio.**

El Juez Asociado Señor Hutchison emitió la opinión del tribunal.

Cupril Oliveras fué convicto del delito de calumnia e injuria. Sostiene que la corte de distrito cometió error al declarar sin lugar una excepción perentoria basada en que la denuncia no imputaba un delito público.

En ésta se alegaba que Cupril Oliveras mientras se celebraba un mitin público, desde la tribuna levantada y desde la cual él y otros oradores dirigían la palabra al público allí congregado, hizo de palabra la siguiente manifestación dirigida a Antonio Soto, que a la sazón era miembro de la Asamblea Municipal de Mayagüez.

"Que el señor Antonio Soto se había vendido con el Senador Valdés por una mueblería que le había puesto en la Calle Libertad."

██ Las secciones 1 y 2 de la "Ley para definir y castigar el delito de calumnia e injuria," aprobada el 9 de marzo de 1911 (que forma hoy en día parte del artículo 254 del Código Penal, edición de 1937), leen así:

"Sección 1.—Se entiende por calumnia toda falsa y maliciosa imputación hecha de palabra y públicamente contra otra persona natural o jurídica, imputándole la comisión de hecho constitutivo de delito.

"Sección 2.—Entiéndese también por calumnia toda palabra o concepto proferido maliciosa y públicamente en deshonra, descrédito, menosprecio de otra persona natural o jurídica."

En la obra Newell, sobre Calumnia y Libelo, páginas 362 y 754, secciones 342 y 752, hallamos lo siguiente:

"Sección 342.—Regla General de hermenéutica legal.—Juez Presidente Shaw: Es regla general de interpretación en causas de injuria y calumnia, en acusaciones por libelo y en otros casos análogos, cuando el delito puede ser cometido mediante el uso de palabras, ya sean orales o escritas, que dichas palabras sean interpretadas y entendidas con el significado que la persona que las escribió o pronunció intentó. Por tanto, si se usa lenguaje oscuro y ambiguo, o lenguaje figurado o erróneo, las cortes y jurados lo interpretarán de acuerdo con su verdadero significado y alcance, y le darán el

significado que puede colegirse de su contexto y de todos aquellos hechos y circunstancias bajo los cuales el mismo se usó.''

"Sección 752.—*Oficio del Innuendo*.—El oficio del *innuendo* es definir el alcance difamatorio que el denunciante trata de dar a las palabras de que se queja, a fin de demostrar el modo o manera en que tienen el alcance difamatorio alegado, e igualmente demostrar cómo las mismas se relacionan con el denunciante, siempre que ello no se desprenda claramente de la faz del contexto. Mas un *innuendo* no debe introducir materia nueva ni ampliar el significado natural de las palabras. No debe darles una interpretación que no tienen. No puede alterar o extender el sentido de las palabras difamatorias ni hacer cierto aquello que en realidad es incierto. Si no es posible que las palabras tengan el significado imputádoles por el *innuendo* y no son prima facie procesables, el juez durante el juicio ordenará a veces un *nonsuit*. Mas si las palabras pueden tener el significado aplicádoles, no importa lo improbable que aparezca que ése sea el espíritu con que ellas se usaron, entra muy bien dentro de las facultades del jurado el decir si en realidad fueron así entendidas.

"El oficio del *innuendo* es alegar el significado del lenguaje publicado. En su consecuencia, si el significado del lenguaje es claro, no se requiere *innuendo* alguno. El uso del mismo nunca puede alterar el alcance de las palabras, ni agregar ni ampliar el mismo. 'De nada sirve un *innuendo* a menos que las palabras a que se aplica contengan una presunción violenta del *innuendo*.' Si el sentido común del hombre se percata de las palabras publicadas e inmediatamente aplica a las mismas sin dificultad o duda un significado libeloso, no se necesita el *innuendo* y el mismo sería algo completamente superfluo y fútil como cuestión de práctica (*pleading*)."

A tenor de las disposiciones del artículo 71 del Código de Enjuiciamiento Criminal (edición 1935):

"La acusación debe contener:
"*. . . . . . . .*

"2. Una exposición de los actos constitutivos del delito, en lenguaje conciso y corriente, y redactada de tal modo que cualquier persona de inteligencia común pueda entenderla."

El artículo 82 en parte, y el 83, leen así:

"Artículo 82.—La acusación es suficiente, si de ella se deduce:
"*. . . . . . . .*

"6. Que la acción u omisión considerada como delito está expuesta clara y distintamente en lenguaje corriente y conciso, sin repetición y de tal modo que facilite a cualquier persona de inteligencia común, conocer lo que se quiere decir.

"7. Que la acción u omisión considerada como delito esté expresada con tal grado de claridad, que facilite al tribunal el pronunciar su sentencia como resultado de una convicción y conforme a derecho.

"Artículo 83.—Ninguna acusación es insuficiente, ni puede el juicio u otro procedimiento cualquiera que sobre ella se base ser afectado a causa de algún defecto o imperfección de forma, siempre que tal defecto o imperfección de forma no tienda en lo esencial a perjudicar los derechos del acusado."

En este caso no tenemos ante nos una acusación sino una denuncia. Ésta no fué redactada por un fiscal sino por el mismo Soto, el dueño de la mueblería y miembro de la Asamblea Municipal de Mayagüez. Este tribunal ha resuelto repetidamente que no examinará minuciosamente una denuncia para buscar sus defectos tal cual lo hace con una acusación redactada en lenguaje idéntico o similar.

█ El decir que un comerciante o presunto comerciante, que también es miembro de una Asamblea Municipal, se ha vendido por una mueblería, no significa que el vendedor de la mueblería ha comprado una cosa, conforme hace un siglo pudo haber comprado un esclavo; tampoco significa que el adquirente de la mueblería haya vendido sus servicios como tal traficante en muebles o como tal comerciante, o que más tarde no pudiera disponer de su tiempo como le viniese en ganas, o que en lo sucesivo la dirección de la mueblería o de cualquier otro negocio ajeno a sus deberes oficiales serían controlados, fiscalizados o influídos en alguna forma por la persona con quien se vendió. Sí significa que el asambleísta ha vendido su libertad de pensamiento y acción como miembro de la Asamblea Municipal; en otras palabras que ha aceptado un soborno. Así serían interpretadas, a nuestro juicio, por cualquier acusado de inteligencia común. Semejante aseveración dirigida a una persona que para aquella época era asambleísta municipal, se refería a él en

su carácter oficial, y no en su carácter particular o como nuevo dueño de la mueblería. ₍Ella sería así interpretada, a nuestro juicio, por cualquier acusado de inteligencia común que ya estuviera informado por el contexto de que el propósito de la denuncia es imputarle el delito de calumnia e injuria.

Véase también *Torres* v. *Lugo,* 56 D.P.R. 878.

La única contención restante es que la sentencia condenatoria no está sostenida por la prueba. Hemos examinado la prueba y la hallamos suficiente.

*La sentencia apelada debe ser confirmada.*

El Juez Asociado Sr. Travieso disintió.*